AMERICAN JET, INC. and Paul T. Bryant, Appellants,

v.

Anthony M. LEYENDECKER, Appellee.

No. 04–84–00050–CV.

Court of Appeals of Texas, San Antonio.

Dec. 19, 1984.

R. William Wood, Denton, Shirley A. Hale, Mann, Freed, Trevino & Hale, Laredo, for appellants.

Mard D. Willett, Laredo, for appellee.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

BUTTS, Justice.

Defendant appeals from a judgment notwithstanding the verdict in which the trial court set aside certain special issues.[1] We affirm in part, reverse and render in part.

---

1. SPECIAL ISSUE NUMBER 22

What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of the persons found by you to have been negligent?

Plaintiff Anthony Leyendecker sued defendants Paul Bryant and American Jet, Inc. for damages to plaintiff's airplane. Plaintiff desired to sell a 1965 Beech King Air Ninety twin-engine turboprop plane to prospective purchaser, defendant Bryant. On September 3, 1979, Bryant in Fort Worth contacted George Ryan, a pilot who had flown the subject plane and who would show the plane to Bryant for Leyendecker. He asked to inspect the airplane prior to a possible commitment to purchase. Arriving in Laredo in his own plane about 4:10 p.m., Bryant taxied his plane next to the turboprop parked on the line. Ryan was waiting at the center in a building, and the two did not meet until after the crash. The plane was unlocked; its log books were on the steps. Bryant did not wait for Ryan but commenced his own thirty-minute preflight inspection. He then took fifteen minutes to start up the plane. With his co-pilot, Jean P. Michenon, next to him, Bryant got permission from the air traffic controllers to take off. The plane crashed about a mile north of the airport when its left engine lost power. Bryant, executing an emergency landing and exit together with his co-pilot, was not injured, but the blades of both propellers were bent rearward; both engines, the bottom of the wings, fuselage and the leading edge of the wings were substantially damaged. A report of the National Transportation Safety Board revealed no gas in the wing tanks and a negligible two gallons in the auxiliary nacelle tanks.

In his petition plaintiff alleged that defendant was negligent when he: failed to verify that the aircraft was very low in fuel at the time that they decided to fly the aircraft; failed to adequately fuel or make arrangements to adequately fuel the aircraft prior to their takeoff in said aircraft; failed to visually and otherwise check both main, and both auxiliary fuel tanks prior to their takeoff in said aircraft; failed to check the fuel gauges for both main, and both auxiliary, fuel tanks prior to their takeoff in said aircraft; failed to conduct an adequate preflight preparation and/or planning prior to their takeoff in said aircraft; mismanaged the fuel supply both prior to their takeoff in said aircraft and during the flight of said aircraft; and failed to follow reasonable preflight procedures for making a proper determination of the amount of fuel in the aircraft prior to takeoff in said aircraft.

Defendant answered, denying plaintiff's allegations and asserted that plaintiff committed these negligent acts:

1. Plaintiff was negligent by virtue of his agents, servants or employees in that they left the airplane in a position to be picked up and test-ridden without the sufficient gasoline in the tanks.

2. Further, they were negligent in leaving the airplane in a position to be picked up and test-ridden with the fuel

---

The percentage of negligence attributable to a person is not necessarily measured by the number of acts or omissions found.

In answering this question, you should consider only the negligence of the Plaintiff, Anthony M. Leyendecker and the Defendant, Paul Bryant, which you have found to be a proximate cause of the occurrence in question, therefore, the percentages should add up to 100%.

PAUL T. BRYANT 60%
ANTHONY M. LEYENDECKER 40%

"MARKET VALUE" means the amount which would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

The market values inquired about in the following issues should be determined without considering the negligence of Anthony M. Leyendecker, if any.

SPECIAL ISSUE NUMBER 23

Find from a preponderance of the evidence the market value in Webb County, Texas, of the aircraft owned by Anthony M. Leyendecker immediately before the occurrence in question.

Answer in dollars and cents, if any.

Answer: $150,000.00

SPECIAL ISSUE NUMBER 24

Find from a preponderance of the evidence the market value in Webb County, Texas, of such aircraft immediately after the occurrence in question.

Answer in dollars and cents, if any.

Answer: $15,000.00

gauge indicators not being in working order.

By its answers to special issues, the jury found the proximate causes of the crash were: (1) Bryant's failure to verify that the aircraft was low in fuel; (2) Bryant's failure to fuel the aircraft; (3) Bryant's failure to visually check main and auxiliary tanks; and (4) Bryant's failure to make a preflight inspection.

On the other hand, the jury found that plaintiff's leaving the aircraft without sufficient fuel and with defective fuel gauges, while negligent, were *not* the proximate causes of the occurrence. Nevertheless, the jury did find plaintiff to be 40% negligent and defendant to be 60% negligent. It also found the pre-crash market value of the plane to be $150,000, the after-crash market value to be $15,000 and lost rental value to be $20,000.

Granting the plaintiff's motion for judgment, the trial court in its judgment n.o.v. disregarded the jury finding as to comparative negligence as well as the jury finding as to the pre-and post-crash values of the airplane. Finding defendant to be liable, the trial court awarded plaintiff $283,000 in damages.

Defendant brings eight points of error: that the definition on sole proximate cause should not have been submitted to the jury; that the after-crash market value was not supported by any evidence at trial; that the issue should not have been submitted; that the trial court should not have disregarded the jury finding of the market value of $150,000 and substituted its finding of $283,000; that there was no evidence indicating Bryant acted within the scope of his employment for American Jet, Inc.; and finally, that no rental value should be allowed to show loss of use of a chattel that was totally destroyed. Although defendant did not object to this special issue concerning rental value at the trial, we will consider it in the general context of the proper measure of damages.

■■■ In reviewing the ruling of the trial court granting motion for judgment notwithstanding the verdict, this court must determine whether there is evidence to support the jury findings. *See* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362 (1960). In deciding a "no evidence" point, we must view the evidence in the light most favorable to the jury findings, considering only the evidence and inferences which support them, and rejecting the evidence and inferences contrary to the findings. *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980); *Freeman v. Texas Compensation Insurance Co.*, 603 S.W.2d 186, 191 (Tex.1980). Judgment may be entered notwithstanding the verdict as authorized by TEX.R.CIV.P. 301 when a directed verdict would have been proper; and further, special issue jury findings may be disregarded which are immaterial or have no support in the evidence. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967).

### SOLE PROXIMATE CAUSE

■■ The trial court submitted the following instruction:

"PROXIMATE CAUSE" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event, but *there can only be one sole proximate cause. If an act or omission of any person was the sole proximate cause of an occurrence, then no act or omission of any other person could have been a proximate cause.* [Emphasis ours.]

Prior to submission, defendant properly objected to the allusion to sole proximate cause within the definition, thereby preserving error for appellate review. *Yellow Cab & Baggage Co. v. Green*, 154 Tex. 330, 277 S.W.2d 92, 93 (1955); TEX.R.CIV.P. 274. Defendant argues that such inclusion

was improper, sole proximate cause not being raised in the pleadings or the evidence. Further, the result of giving this definition so confused the jury that it tainted its answers to other special issues.

Sole proximate cause is an inferential rebuttal issue and can no longer be submitted as a special issue. *Scott v. Atchison, Topeka & Santa Fe Railway Co.*, 572 S.W.2d 273, 279 fn. 7 (Tex.1978); TEX. R.CIV.P. 277. Inferential rebuttal issues, including sole proximate cause, are defined as denial issues. *Id.*

Sole proximate cause pertains to neither the conduct of the plaintiff nor that of the defendant but to a third party, whose conduct would be solely causative of the occurrence at issue. *Herrera v. Balmorhea Feeders, Inc.*, 539 S.W.2d 84, 86–87 (Tex.1976).

In the present case there is no evidence showing the event resulted from some cause other than the negligence of one or both of the parties. Also, Ryan was the agent of the plaintiff and not a "third party." *See Querner v. DeSpain*, 339 S.W.2d 723 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.). We, therefore, find that the court's allusion to sole proximate cause at the end of the proximate cause explanatory instruction was improperly made since it was not in the pleadings or evidence. There was no "third party" in the case. Rule 277 provides that the trial court should issue only those instructions "as shall be proper to enable the jury to render a verdict." TEX.R.CIV.P. 277. *Compare Transport Insurance Co. v. Liggins*, 625 S.W.2d 780, 783 (Tex.Civ.App.— Fort Worth 1981, writ ref'd n.r.e.). We hold the trial court's allusion to sole proximate cause in the instruction and definition of proximate cause was erroneous.

The next question is whether such a definition "... was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case ...," thereby requiring a reversal. TEX.R. CIV.P. 434.

In answer to the special issue on comparative negligence, the jury found defendant to be 60% negligent and plaintiff to be 40% negligent. Defendant argues this answer is in conflict with former special issues which found that though plaintiff acted negligently, his acts were not proximate causes of the occurrence, asserting the jury believed they must choose either acts of plaintiff or those of defendant as the sole proximate cause of the crash. We do not agree and hold that the trial court correctly disregarded the percentage answer.

We hold under the facts of this case, the portion of the proximate cause instruction referring to sole proximate cause constitutes harmless error. To obtain reversal the defendant must show the error amounted to such a denial of his rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex.1962). We have determined this to be harmless error by reviewing the entire record. *Gomez Leon v. State*, 426 S.W.2d 562, 565 (Tex. 1968); TEX.R.CIV.P. 434.

Here the jury answered the controlling issues, and no point of error is addressed to the issues of proximate cause or to the sufficiency of the evidence supporting the findings, and there is no reason to believe the jury would have answered the issues differently without the reference to sole proximate cause. The defendants have not shown, as required, that the complained-of instruction was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. In that regard points of error one is sustained and two is overruled.

The jury found plaintiff's acts, although negligent, were not a proximate cause of the occurrence. The words *contributory negligence* and *negligence* used in TEX.REV.CIV.STAT.ANN. art. 2212a (Vernon Supp.1984), the comparative negligence statute, have been interpreted to mean such contributory negligence and such negligence as was a proximate cause

of the occurrence in question. *Howard v. Bachman,* 524 S.W.2d 414, 416 (Tex.Civ. App.—Eastland 1975, no writ). Where there is an asserted conflict between the finding that the negligence was not a proximate cause of the occurrence and the finding of damages, there is no fatal conflict. *Lewis v. Yaggi,* 584 S.W.2d 487, 498 (Tex. Civ.App.—Tyler 1979, writ ref'd n.r.e.). It is said that the damages question becomes immaterial when no liability is found. *Howard v. Bachman, supra,* at 417. The specific finding on liability will control the general finding of damages. *Id. Garza v. Waco Scaffold & Shoring Co.,* 576 S.W.2d 442, 446 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *see Pate v. Yeager,* 552 S.W.2d 513, 517 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). When applied to a comparative negligence situation, the principle dictates that issues establishing or negating liability control over the issue which apportions, rather than establishes, negligence. *Williams v. Finley,* 567 S.W.2d 611, 612 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). In the present case the trial court correctly disregarded and set aside the comparative negligence finding.

## SCOPE OF EMPLOYMENT

In point of error seven, defendant also argues that the record does not indicate that Paul Bryant acted within the scope of his employment for defendant American Jet, Inc.; therefore, American Jet cannot also be held liable. In a hearing with counsel outside the presence of the jury the trial court ruled that a special issue as to the liability of American Jet was unnecessary because an issue finding Bryant liable would be the same as an issue holding American Jet liable.

 Paul Bryant testified that he owned 100% of American Jet and that the purpose of his trip to Laredo was to acquire a jet for his business that he could lease out to other parties with an option to purchase. A special issue should not be submitted when it is conclusively established or it can be answered as a matter of legal deduction from undisputed facts. *Great American Mortgage Investors v. Louisville Title Insurance Co.,* 597 S.W.2d 425, 432 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); 2 R. McDONALD, TEXAS CIVIL PRACTICE, § 12.08–C (rev. 1983). We find no separate issue was necessary on the liability of American Jet, Inc. and overrule point of error seven.

## DAMAGES

In the remaining points of error, defendant addresses the judgment n.o.v. concerning damages. The jury, in special issues twenty-three, twenty-four and twenty-five found that the airplane was worth $150,000 immediately prior to the crash, $15,000 immediately after the crash, and that plaintiff lost $20,000 in rental values as a result of the crash.

 The trial court in its judgment n.o.v. ordered that plaintiff recover $283,-000 from defendant. Bud Ridgeley testified he sold the plane to plaintiff in 1979, for $263,000, shortly before the crash. He stated this was a competitive price and the fair market value of the plane and included taxes and transfer costs. He also testified the plane could be rented at that time for at least $3,000 a month. The jury findings which were set aside were that the pre-crash value was $150,000, and the after-crash value was $15,000. An examination of the record reveals these two figures are not supported in the evidence. There were several pictures admitted into evidence showing the plane before and after the crash. There were schematic drawings. However, the evidence does not indicate their admission was for the purpose of proving market value. While it is the prerogative of the jury to set damages, they may not arbitrarily fix an amount not supported by any evidence. *Thomas v. Oil & Gas Building, Inc.,* 582 S.W.2d 873, 881 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). While there was some evidence to show the market value was $263,-000, and this was not refuted, there was none to support the two jury findings of market value. Therefore, we hold that the

trial court correctly set aside those two findings. Rule 301.

The general rule for measuring damages to personal property is the difference in the market value immediately before and immediately after the injury to such property at the place where the damage was occasioned. *Pasadena State Bank v. Isaac*, 149 Tex. 47, 228 S.W.2d 127, 128 (1950). But when a chattel is totally destroyed, it is conceivable that the personal property destroyed might not have a market value. *Id.* Thus where an airplane has been totally destroyed, the proper measure of damages could properly be the market value of the plane at the time of its destruction. This was shown in the present case by Ridgeley's testimony of the price paid in Laredo by the owner for the plane. It was not shown that the plane was readily replaceable or repairable. Further, the defendant did not present any proof of the salvage value of the plane, if any. We agree there is no evidence in the record to support the jury's answer that the after-crash value of the plane was $15,-000. Plaintiff chose to recover the market value of the plane at the time of its destruction and did not elect to recover the difference between the values before and after the crash. The finding of the after-crash value, if it could have been proved, or salvage value, would have benefited the defendant. It can be seen that the trial court treated the measure of damages of the totally destroyed plane as that market value at the time of its total destruction. We agree this was proper under the facts of this case.

However, we do not agree that the $20,000 found as "loss of use" damages was recoverable since the plane was totally destroyed.

Unrefuted testimony established that the airplane was a total loss. The reason for not allowing for loss of use when the chattel is totally destroyed is because such damages are included as a part of the award for total loss. *Riddell v. Mays*, 533 S.W.2d 910, 911 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). We sustain points of error three, five, and eight, and we overrule four and six. We reverse and render the judgment in part as to loss of use damages ($20,000). We reform the judgment as to damages for the destruction of the plane to the value shown: $263,-000. Rule 434.

The judgment of the trial court is affirmed and reformed in part and reversed and rendered in part. Costs of appeal are taxed one-half against appellants and one-half against appellee.