**Opinion issued October 13, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00203-CV

————————————

**WESLEY JACKSON AND SUNSET HOUSTON EXPRESS, INC.,**
**Appellants**

**V.**

**EARL GOULD, Appellee**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-50296**

---

## MEMORANDUM OPINION

Appellee, Earl Gould, sued appellants, Wesley Jackson and Sunset Houston

Express, Inc., for damages from a car crash.  Following a bench trial, the trial court

signed a judgment in favor of Gould.  In three issues, Jackson and Sunset argue (1)

the evidence was legally and factually insufficient to support the trial court's

determination of liability, (2) the trial court abused its discretion by admitting evidence of property damage, and (3) the judgment contains a double recovery of damages.

We reverse and render, in part, and affirm, in part.

## Background

Jackson was driving his Freightliner truck to the Port of Houston to pick up a load for delivery. While driving along a two lane road, he saw a utility truck parked in his lane, near a stop sign. Jackson drove around the utility truck, entering the opposing lane of traffic. When he came to a stop, the rear portion of his truck was still in the opposing lane of traffic.

Gould turned onto the street Jackson was on. Jackson's truck blocked his passage, so he came to a stop. When traffic cleared on the intersecting road, Jackson began to turn right. As he did so, he felt a tug on his truck. One of his rear wheels had struck the front of Gould's car. As a result of the accident, Gould suffered damage to his car as well as back pain.

Gould later brought suit. When Jackson and his employer, Sunset, answered, they served Jackson with requests for disclosure, including requests for Jackson to disclose the amount and method of calculating damages.

Gould's original petition did not seek recovery for property damage. He added that claim, however, in his amended petition. At the bench trial, Gould

2

attempted to admit evidence of the damage to his property. Jackson and Sunset objected, arguing Gould had failed to disclose the amount and method for calculating property damage in response to their requests for disclosure. Gould's attorney argued he did disclose the information, showing the trial court an amended response to the request. Gould's attorney told the trial court that the amended response contained a certificate of service. He told the trial court, however, that he could not find a copy of the fax confirmation sheet in his files at court. The trial court then had the following exchange with Jackson and Sunset's attorney:

> THE COURT: . . . . So how do we cure your surprise issue? And I'm not fussing at you, I'm just saying. Do you want to go take a deposition? Let's go take a deposition. Do you want to have a pause? . . . .
>
> . . . .
>
> So how do we deal with this? I want to cure your issue; I don't want to strike it. I want to cure your issue. So how do we deal with that? He's seeking it in his pleadings. So how do we cure your surprise issue?
>
> [TRIAL COUNSEL]: In the -- I guess the way I see it is it's not so much as a surprise as it is due diligence. If you're going to testify at trial and you've been set two times --
>
> THE COURT: Excuse me. Do you want to go back to due diligence? Is that how you would like me to make my ruling? Counsel says he[] doesn't have the confirmation, but he says he sent them and he's got a Certificate of Service.
>
> [TRIAL COUNSEL]: Sure.
>
> . . . .

THE COURT: Okay. Well, maybe there's some other issues there; but, folks, I'm overruling your objection.

Gould then testified about the damage to his car. He also testified that he paid $800 for a rental car during the time his car was being repaired. In addition, he testified he was seeking recovery for loss of use but didn't testify what his loss of use consisted of or how damage for it would be calculated. Gould's counsel later told the trial court, however, that Gould was asking for $35 per day for the 60 days his car was being repaired.

During closing argument, Jackson and Sunset's attorney suggested that the trial court had to choose between accepting Gould's testimony about how the accident occurred or Jackson's testimony about it. The trial court stopped the attorney and said he was allowed to credit portions of both witnesses' testimony. He added,

> And, you know, it strikes me that -- we don't have this said very much in this world but -- and it kind of went away as a defense or a claim, but last clear chance, right? Remember the Doctrine of Last Clear Chance? We don't really use it anymore, although factually it makes sense. It's a way of saying who could have prevented this and how.

> But anyway, go ahead.

After trial, the trial court issued findings of fact and conclusions of law. The trial court's findings were consistent with Jackson's testimony. Specifically, it found that a parked vehicle was in Jackson's lane, that Jackson drove into the opposing lane of traffic, that both Jackson and Gould were at complete stops before

4

the collision, and that Jackson "pulled his truck forward and struck [Gould]'s car, which was still at a complete stop."

The trial court also listed traffic violations it determined that Jackson made. Among them, the trial court found that Jackson "was driving the vehicle at an excessive rate of speed." The trial court also found that Gould was entitled to $800 for his rental expenses and $2,100 ($35 dollar a day for 60 days) for loss of use.

## Legal & Factual Sufficiency

In their first issue, Jackson and Sunset argue the evidence was legally and factually insufficient to support the trial court's determination of liability.

### A.    Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Nguyen v. Yovan*, 317 S.W.3d 261, 269–70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). When challenged, a trial court's findings of fact are not conclusive if there is a complete reporter's record on appeal. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002). We review a trial court's findings of fact under the same legal sufficiency of the evidence standard used when determining whether sufficient evidence exists to support an answer to a jury question. *See Catalina*, 881 S.W.2d at 297; *Nguyen*, 317 S.W.3d at 269–70.

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *See BMC Software*, 83 S.W.3d at 794. In an appeal from a bench trial, we review the conclusions of law de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *See id.* "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.*

When considering whether legally sufficient evidence supports a challenged finding, we must consider the evidence that favors the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). We view the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference to support them. *Id.* at 822. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. Because it acts as the fact finder in a bench trial, the trial court is the sole judge of

the credibility of witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). As long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the fact finder. *City of Keller,* 168 S.W.3d at 822.

When it attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the appellant must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established. *Id.*

In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Arias v. Brookstone, L.P.,* 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When the appellant challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the

finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.,* 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When it challenges an adverse finding on an issue on which it had the burden of proof at trial, the appellant must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242; *Reliant Energy Servs., Inc.,* 336 S.W.3d at 782.

**B.    Analysis**

It was agreed at trial that, at the time of the accident, a utility truck was parked in the lane of traffic that Jackson was driving on. Jackson testified that he moved into the opposing traffic lane to drive around the utility truck. He stopped at the intersection and saw Gould turn onto the road Jackson was on. Jackson waited for the traffic to clear on the other road, and then pulled out. When he pulled out, Jackson felt a tug on his truck. Jackson said he thought Gould had passed him but must have been in his blind spot instead. Jackson conceded that, given the time that passed from when Gould turned onto the road to when Jackson began to drive, Gould must have come to a stop in order to still be there when the collision occurred.

The trial court made findings consistent with Jackson's testimony. Specifically, it found that a parked vehicle was in Jackson's lane, that Jackson drove into the opposing lane of traffic, that both Jackson and Gould were at complete stops

8

before the collision, and that Jackson "pulled his truck forward and struck [Gould]'s car, which was still at a complete stop." Jackson and Sunset argue that there is a conflict in the trial court's findings because the trial court also found that Jackson "was driving at an excessive rate of speed." "We will not set aside a judgment because of conflicting findings of fact if the conflict can be reconciled." *Man Indus. (India), Ltd. v. Midcontinent Exp. Pipeline, LLC*, 407 S.W.3d 342, 366 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *accord Hartford Ins. Co. v. Jiminez*, 814 S.W.2d 551, 552 (Tex. App.—Houston [1st Dist.] 1991, no writ).

As Gould points out, the trial court's finding that Jackson was driving at an excessive rate of speed and that Jackson was at a complete stop before the collision can be reconciled. Importantly, the trial court does not place a time period for when Jackson was speeding. Likewise, the trial court does not draw any causal connection between Jackson's speeding and the collision. The trial court's finding that Jackson was at a stop before the collision is included in the trial court's chronology of events. In contrast, the trial court's finding that Jackson was speeding is included later in the trial court's list of traffic violations that Jackson committed.

As Gould correctly argues, the evidence at trial established that Jackson was transporting multiple loads from the Port of Houston to Katy, Texas. Jackson testified that he got paid by the load and that the faster he made the deliveries and returned to the port, the more money he made. For this reason, a finding that Jackson

9

had been speeding before the accident bolsters the theme that Jackson was rushing to get to the port and was not paying sufficient attention to his surroundings.

Next, Jackson and Sunset argue that the trial court's findings that he failed to maintain a single lane, failed to operate the vehicle in a reasonable manner, and failed to keep a proper look out cannot support the judgment. They point out that, by the time of the accident, Gould had passed the cab of Jackson's truck. They argue that the fault was Gould's for turning "when he did not have proper clearance to do so." This was a fact issue to be resolved by the fact finder. Jackson and Sunset point to nothing in the record to establish that the trial court had to reach this determination as a matter of law or that the verdict was clearly wrong and manifestly unjust. *See Dow Chem.*, 46 S.W.3d at 241 (holding legal sufficiency argument must establish all vital facts as matter of law); *Cain,* 709 S.W.2d at 176 (holding factual sufficiency argument must establish verdict was clearly wrong and manifestly unjust).

They further argue, without authority, "There is no duty to look behind you to the left when making a right turn." Drivers have a duty to keep a proper lookout. *Montes v. Pendergrass*, 61 S.W.3d 505, 509 (Tex. App.—San Antonio 2001, no pet.). This includes the duty to be aware of the traffic and general situation in the driver's vicinity and to be aware of the proximity of other vehicles. *Id.* Jackson and Sunset's argument suggests that the duty applies to the vicinity of the cab of his truck but not to the remainder of his vehicle. There is no support for this argument.

Jackson and Sunset argue that there was no evidence to support the trial court's findings that Jackson violated any traffic laws or regulations. Proof that a defendant violated a traffic law is not a prerequisite to a finding of negligence. Accordingly, Jackson and Sunset provide no explanation for how this would require reversal of the trial court's judgment.

Finally, they argue that the trial court's judgment was improperly based on the last-clear-chance doctrine. During closing arguments, the trial court remarked,

> And, you know, it strikes me that -- we don't have this said very much in this world but -- and it kind of went away as a defense or a claim, but last clear chance, right? Remember the Doctrine of Last Clear Chance? We don't really use it anymore, although factually it makes sense. It's a way of saying who could have prevented this and how.

> But anyway, go ahead.

Jackson and Sunset correctly argue that the last-clear-chance doctrine has been abolished in Texas. *See Nabors Well Services, Ltd. v. Romero*, 456 S.W.3d 553, 560 (Tex. 2015). They argue that this means the trial court misapplied the law. We disagree.

The trial court expressly acknowledged in that statement that the doctrine no longer applies. We have no reason to believe, then, that the trial applied law that has since been abolished. *See Goodson v. Castellanos*, 214 S.W.3d 741, 750 (Tex. App.—Austin 2007, pet. denied) (holding appellate courts presume trial court correctly followed applicable laws). Moreover, when evaluating the legal and

11

factual sufficiency of a trial court's judgment following a bench trial, our review is based on the trial court's findings of fact and conclusions of law. *See Catalina*, 881 S.W.2d at 297; *Nguyen*, 317 S.W.3d at 269–70. The last-clear-chance doctrine is not mentioned or applied in the findings of fact and conclusions of law. Accordingly, the passing reference to the doctrine does not affect the judgment in this case.

We overrule Jackson and Sunset's first issue.

## Property Damage Evidence

In their second issue, Jackson and Sunset argue that the trial court abused its discretion by overruling their objection to Gould's evidence of property damage. We hold this issue has been waived.

Upon request, Rule 194 of the Texas Rules of Civil Procedure requires a plaintiff to disclose "the amount and any method of calculating economic damages." TEX. R. CIV. P. 194.2(d). Jackson and Sunset sent requests for disclosure to Gould, including information about economic damages. Shortly after the request was sent, Gould amended his petition and added a claim of damage to property. Gould told the trial court that he served Jackson and Sunset with a response to the requests for disclosure that identified the amount and method of calculating damages, including property damages. Gould showed the response to the trial court and identified a certificate of service included in the response. Jackson and Sunset denied receiving

12

the response. Gould asserted he faxed the response but could not find the fax confirmation sheet in his files at trial.

Jackson and Sunset sought the exclusion of property damages due to the alleged failure to serve the response that included the amount and method of calculating the property damages. A party that fails to timely disclose requested evidence before trial cannot introduce that evidence at trial. TEX. R. CIV. P. 193.6(a). A trial court may still permit the admission of the evidence, however, if the offering party establishes that there was good cause for the failure to disclose the evidence or that the failure to disclose "will not unfairly surprise or unfairly prejudice the other parties." TEX. R. CIV. P. 193.6(a)–(b). If the offering party cannot establish either of these, the trial court "may grant a continuance or temporarily postpose the trial to allow a response to be made . . . and to allow opposing parties to conduct [relevant] discovery." TEX. R. CIV. P. 193.6(c).

The trial court recognized during their discussion that, if Jackson and Sunset were unduly surprised, it had the authority to cure the problem by continuing the trial and allowing discovery on the matter. *See id.* The trial court asked Jackson and Sunset what they wanted to do to cure the problem. Their counsel responded, "I guess the way I see it is it's not so much as a surprise as it is due diligence." The trial court asked, "Do you want to go back to due diligence? Is that how you would

like me to make my ruling?" Their counsel answered, "Sure." The trial court overruled the objection and allowed evidence of property damage.

Now, on appeal, Jackson and Sunset argue the trial court violated rule 193 by admitting the evidence. To preserve an issue for appeal, a party must make a timely objection and obtain a ruling. TEX. R. APP. P. 33.1(a); *see also* TEX. R. EVID. 103(a) (requiring objection and ruling in order to claim error in admission of evidence). When the trial court tried to follow rule 193 to cure any error in any failure to properly disclose property damage, Jackson and Sunset declined the trial court's offer to cure the error, argued that their objection did not concern unfair surprise, and asked the trial court to rule instead on a due diligence complaint. We hold Jackson and Sunset waived any error that may have arisen from rule 193.

We overrule Jackson and Sunset's second issue.

### Double Recovery

In their third issue, Jackson and Sunset argue that Gould's recovery of both rental value and loss of use in the judgment constitutes a double recovery. The judgment awards Gould $800 for the expense of renting a car while his car was being repaired. It also awards Gould $2,100 for loss of use. The findings of fact determine that Gould suffered those injuries. Loss of use was determined to be $35 per day for 60 days as the car was being repaired.

14

For a suit involving injury to a car, loss of use is established by proof of "the reasonable rental value of a substitute automobile." *Luna v. N. Star Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex. 1984). Accordingly, recovery for rental car expenses and for loss of use is redundant. *See id.*

At trial, Gould presented evidence that he paid $800 to rent a car while his car was being repaired. There was no evidence that Gould did or would have had to pay $2,100 to rent a car. Accordingly, Gould cannot recover $2,100 in addition to the $800 for which he presented proof of rental.[1]

We sustain Jackson and Sunset's third issue.

## Conclusion

We reverse the portion of the trial court's judgment awarding $2,100 for loss of use and render judgment removing that award. We affirm the remainder of the judgment.

Laura Carter Higley
Justice

---

[1] In his brief, Gould does not contest Jackson and Sunset's claim of double recovery. Instead, Gould "retracts the loss of use claim and retains the right to recover the awarded rental car expense of $800." Gould provides no authority to establish he can avoid a determination of double recovery by "retracting" one of the recoveries while asserting a right to pursue it later.

15

Panel consists of Chief Justice Radack and Justices Higley and Huddle.